IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

CHARLES K. BRELAND,                                    Case No.: 16-2272-JCO
                                                                    Chapter 11

    Debtor;


In re:

OSPREY, UTAH, LLC,                                      Case No.: 16-2270-JCO
    Debtor.                                                        Chapter 11


## <u>MEMORANDUM OPINION AND ORDER</u>


    This matter came before the Court on the Joint Amended Motion of A. Richard Maples as

Trustee, Osprey Utah, LLC and Levada EF Five, LLC to Approve Compromise (the "Amended

Compromise Motion")(Doc.353)[1] and the Objection of Debtor, Charles K. Breland Jr.

("Breland") thereto. (Doc. 360). Hearing on the matter commenced October 7, 2019, resumed

January 16, 2020 and concluded January 17, 2020. Thereafter, the parties were allowed until

February 4, 2020 to submit written closing arguments and have done so timely. (Docs. 416,417).

    This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157, and

the Order of Reference of the District Court dated August 25, 2015. This is a core proceeding

pursuant to 28 U.S.C. §157(b)(2)(A), and the Court has authority to enter a final order.

    Having considered the Amended Motion to Approve Compromise in light of the record,

pleadings, testimony, exhibits, briefs and arguments of counsel, the Court finds that the

---

[1] For ease of reference the document references herein pertain to *In re Osprey Utah, LLC*, Bank.S.D. Ala.
16-2270 unless otherwise noted.

1

Amended Compromise Motion is due to be DENIED without prejudice based upon the Trustee's failure to carry his burden of proof that the settlement meets the minimum standards of reasonableness. The Court further finds as follows:

<u>BACKGROUND</u>

This is not the first instance in which the Court has assessed the reasonableness of a Motion to Compromise concerning the parties and issues now before it. Previously the Trustee[2], Osprey Utah, Levada and the Donados filed a Motion to Approve Compromise on August 4, 2017 (the "Prior Motion"). (Doc. 197). The Prior Motion proposed a settlement which included: (1) transfer of Osprey Utah's ( "Osprey") property interests in Carbon and Emery Counties, Utah, (the "Property")[3], which the Debtor[4] holds jointly with creditor Levada EF Five, LLC ("Levada") to Levada; (2) dismissal of two appeals pending before the Eleventh Circuit; (3) dismissal of the *Breland v. Levada*[5], adversary alleging fraud upon court by Levada; (4) transfer of the Breland Estate's interest in Patmos Energy to Levada; (5) termination of the Amended and Restated Agreement ("ARA") between Osprey and Levada.[6]; (6) dismissal of the Osprey Chapter 11; (7) assignment of a judgment held by the Donados against Osprey to Levada and (8) execution of broad releases in exchange for a reduction of Levada's proof of claim to an

---

[2] A. Richard Maples was appointed as Chapter 11 Trustee of the Estate of Charles K. Breland, Jr., 16-2272, Bankr. S.D. Ala. (Docs. 382, 391) and was therein charged with the management of the Debtor's individual bankruptcy estate. By virtue of managing the Debtor's individual estate, Mr. Maples is likewise in control of the estate in the *Osprey Utah* case, since Breland is the sole owner of that LLC.

[3] The property interests and the Lawsuits are Osprey Utah's only assets or potential source of income.(*In re Breland*, Doc. 903 at 3).

[4] Osprey Utah, LLC is the entity which holds the interest in the Property. The instant case, *In re Osprey Utah,* 16-2270 and *In re Breland,* 16-2272 are treated as companion cases.

[5] Pending Adversary Proceeding Case No. 17-18-JCO, Bankr. S.D. Ala.

[6] The ARA was entered into between the Debtor and Levada during the prior Chapter 11 bankruptcy, case of Charles K. Breland, 09-11139-MAM, S.D. Ala. 2009. It purported to set out the rights and duties regarding the Property belonging to Debtor and Levada.

2

unsecured claim amount of $1,847,695.94 and Levada paying up to $250,000.00 on the Donados' claim.

This Court conducted an evidentiary hearing on the Prior Motion and entered an Order denying the same without prejudice ("Denial Order") on February 14, 2018. (Doc.285). The Court noted in its Denial Order that the ARA is complex and less than artfully drafted; there is a discrepancy between the ARA and the deeds as to whether Osprey's interest is one third or one-half of the remaining property; the ARA places multiple obligations on Osprey and Levada which upon default shifts ownership interest; the parties remain bound by the ARA and there is significant value in terminating the ARA. (*Id.* at 7).

The Court determined that the Prior Motion fell below the lowest point in the range of reasonableness. Such finding was based upon numerous considerations including: Trustee's failure to market the Property; Trustee's failure to obtain an independent appraisal; concerns regarding the Levada appraisal methodology; failure to value the benefit to Levada of obtaining outright ownership of the Property; lack of evidence as to the significant value assigned to the transfer of rights under the ARA and lack of evidence as to the value of the proposed releases. In sum, this Court held that the Trustee failed to submit sufficient evidence to meet his burden of the reasonableness of the settlement.

The settlement terms now proposed in the Amended Compromise Motion are as follows: (1) transfer of Osprey's property interests in Carbon and Emery Counties, Utah, ("the Property"), to co-owner, Levada; (2) dismissal of one remaining appeal pending before the Eleventh Circuit; (3) dismissal of the *Maples v. Levada*[7] preference action filed against Levada; (4) dismissal of

---

[7] Pending Adversary Proceeding, Case No. 18-29-JCO, Bankr. S.D. Ala.( "Preference Adversary").

Case 16-02270    Doc 418    Filed 04/03/20    Entered 04/03/20 13:51:57    Desc Main
Document      Page 3 of 21

the *Breland v. Levada* adversary proceeding alleging fraud upon the court by Levada; (5) transfer of the Breland Estate's interest in Patmos Energy to Levada; (6) termination of the ARA between Osprey and Levada; (7) dismissal of the Osprey Chapter 11; and (8) broad releases in favor of Levada, its principal, Adrian Zajac, Argos Investment Partners, LLC and their principals, agents, owners, members, attorneys, employees, affiliates and affiliated and related persons and entities in exchange for a reduction of Levada's claim to $1,700,000.00 bifurcated into an $850,000.00 secured claim and an $850,000.00 unsecured claim. The Donados are no longer involved as the Trustee acquired their interests by payment of $200,000.00 (the "Donado Settlement") which will inure to the benefit of Levada under the terms of the Amended Compromise Motion.

## FINDINGS OF FACT

This Court has taken judicial notice of the record, pleadings and evidence presented in conjunction with the Prior Motion which resulted in the Denial Order.(Doc. 285). In addition, the Court now adds its factual findings pertaining to the evidence presented during the three-day hearing on the Amended Compromise Motion. The Court heard testimony of the Trustee, A. Richard Maples as well as two expert appraisers, Christopher T. Hansen ("Hansen") and Gordon E. Lowe ("Lowe").

The Trustee testified that prior to filing the Amended Compromise Motion, he reread the Denial Order, reviewed the prior proceedings and communicated with brokers and potential purchasers including Levada. He indicated that he was aware of expressions of interest in the Property by third parties with financial means to purchase the Property. However, upon discussions with potential purchasers, the Trustee learned they were only interested in acquiring

4

the Property in fee, not just a partial interest. Hence, he opted instead to pursue the Amended Compromise Motion with Levada.

The Trustee's testimony evidenced he understood that one reason for the prior Denial Order was failure to engage an independent, unbiased appraiser. Yet the evidence revealed that he involved Adrian Zajac ("Zajac"), a principal of Levada, in the process of securing a new appraiser. (Debtor's Ex.139). The Trustee's expert, Christopher Hansen was the first suggestion on the list Zajac provided. *Id.* Further, the evidence established that Zajac had additional involvement and communications with Hansen to the point where Hansen represented in an e-mail that he was performing the appraisal for Zajac. (Ex. 140).

The Trustee testified that in his opinion, the proposed compromise is in the best interest of the Estate because it "gets rid of the entanglement with Levada," he did not deem the adversary proceeding for fraud upon the Court or the appeal of the Levada District Court Judgment worth pursuing and he sought to avoid fees and expenses. However, the Trustee's testimony also revealed that: (1) he believes he has the "high-side" on the Preference Adversary against Levada; (2) he "may have to re-visit" the omission of Breland and Osprey from the proposed released parties; (3) he never received requested documentation substantiating the post-judgment attorney's fees claimed by Levada comprising approximately $1,268,549.40 of its amended claim of $3,668,763.91[8]; (4) the Breland Estate account balance is approximately $5,500,000.00; and (5) administration of the Breland estate is expected to result in a surplus.

In response to questioning about how the Trustee satisfied himself as to the reasonableness of the proposed compromise, the value of the consideration to be received by

---

[8] See case no. 16-2272, ECF Claim No. 15-2 ("Levada's Amended Claim").

5

Levada and the loss of rights to the Debtor, he indicated that he felt that the Estate was getting sufficient value. However, he acknowledged that: (1) there was no discrete valuation of either Osprey's loss of rights under ARA, the benefits to Levada from cancellation of the ARA or the broad, sweeping releases; (2) an argument can be made that it is not appropriate to apply a partial interest discount when the purchaser receives a full fee simple interest; (3) components of the Amended Compromise Motion could be accomplished by other means including but not limited to a proposed plan; and (4) Levada's failure to meet its obligations under the ARA to pay Property taxes, necessitated the Trustee filing an emergency motion and obtaining an Order[9] for which the Estate has not sought recompense. Additionally, the Trustee's candid testimony established that despite Breland's experience as a real estate developer and the likelihood of a surplus in the case, he did not afford deference to Breland's viewpoints concerning liquidation of estate assets. Further, the Court found it noteworthy that on cross examination the Trustee unequivocally stated that the terms of the Amended Compromise Motion are worse than the Prior Motion.

Christopher T. Hansen provided expert testimony on behalf of the Trustee. Hansen's testimony and appraisal report predicated his valuations of Osprey's interests in the Property upon his opinion that Osprey holds the following partial interests: 33% mineral interest in 17,027 mineral acres, 50% in 13,636 surface acres and 33% in future net sale proceeds. Then Hansen made various downward adjustments to his valuations. Specifically, Hansen applied a 25% "partial interest" discount to his valuation of the mineral interest held by Osprey; a 20% "present value" discount to his valuation of the surface revenue held by Osprey and a 25% "partial interest" discount to his estimate of the value of Osprey's interest in future sale proceeds.

---

[9] See, *In re Breland*, 16-2272, Bankr. S.D. Ala., Docs. 914, 927.

6

Hansen's report indicated a range of value of Osprey's interests from $775,000.00 to $1,925,000.00 depending on what he termed "extraordinary assumptions" due to differing interpretations of the ARA and related deeds as to whether Osprey holds a one-half or one-third interest in the Property.

The Court noted the absence of pertinent information from Hansen's Appraisal Report. In particular, Hansen's Appraisal did not provide any analysis or discrete valuations with regard to various components of the Amended Compromise Motion including the proposed transfer of rights under the ARA, the benefit to Levada of termination of its obligations under the ARA, the value of the potential contingency interest held by Osprey upon a default by Levada under the ARA or the value of the proposed broad one-sided releases. Hansen's deposition testimony reflected that he only valued Osprey's partial mineral interest, partial surface revenue interest and partial sale interest. (Hansen Dep.122-126). Hansen's in court testimony seemed somewhat contradictory to his report and unclear at times as to if and how he may have somehow factored Osprey's interests under the ARA into his calculations. At one point he stated he did not value the interests and then later indicated he did value the interests and just assigned them no value; the Court has no choice but to conclude that an adequate assessment of such interests was not conducted.

Gordon E. Lowe ("Lowe") provided expert testimony on behalf of the Debtor. He testified regarding his Appraisal Report Addendum[10] as well as his review of Hansen's Appraisal Report. Lowe testified that he updated his prior appraisal in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP ") including evaluating new sales and

---

[10] Lowe's original appraisal report was offered into evidence at the hearing of the Prior Motion and the Court took judicial notice of his prior report and expert testimony related thereto.

7

applying market adjustments. As a result of his investigation and analysis, Lowe concluded that there has been no change to the Property since this initial valuation date and the value estimate of the Property remained the same at $10,227,000 which would result in an allocation to Osprey ranging from $3,374,964 to $5,113,582 depending on if its interest is determined to be one-third or one-half under the ARA.

Lowe's testimony as an expert in appraisal review and his Appraisal Review Report (Debtor's Ex. 3B) strongly criticized Hansen's Appraisal Report and methodology. Lowe testified that among other deficiencies, Hansen's Appraisal neglected to consider thirteen applicable comparable sales, failed to appropriately verify sales and incorrectly listed parties to various transactions. Lowe opined that Hansen's Appraisal Report was riddled with errors, lacked justification for downward adjustments, did not present a supportable analysis for his valuation of Osprey's interest and should not be relied upon. Although Lowe found much fault with Hansen's Appraisal, upon rehabilitation, the Court noted numerous typographical errors in the reports were inconsequential and many of the purported major deficiencies in Hansen's Report could be categorized as minor. Notwithstanding the significant difference in their valuations, the Court found both experts' testimony to be forthright.

As noted at the prior hearing, one thing the experts seemed to agree on was that the highest and best use of the Property is a hold. Neither expert contended there was any urgency or market benefit to selling the Property at this time. Likewise, the Trustee did not offer any compelling reason for the immediate liquidation of the Property.

<u>CONCLUSIONS OF LAW</u>

Federal Rule of Bankruptcy Procedure Rule 9019[11] provides the procedure by which a bankruptcy court may consider a motion to compromise; however, the court may not approve a settlement unless it is fair, equitable, and in the best interests of the estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544 (11th Cir.1990); *Air Line Pilots Assoc. v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.),* 156 B.R. 414, 426 (S.D.N.Y.1993), aff'd, 17 F.3d 600 (2d Cir.1994); *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 361 (Bankr.S.D.N.Y.2002). The Court need not decide all issues of law and fact raised by a proposed compromise but shall only canvass the issues to conclude whether the settlement falls below the lowest point in the range of reasonableness. *In re Vazquez*, 325 B.R. 30 (Bankr. S.D. Fla. 2005); *In re Dewey and LeBouf LLP*, 478 B.R. 627 (Bank. S.D. NY (2012). As this Court delineated in its prior Denial Order, although the court may consider the opinions of the trustee or debtor and their counsel that a settlement is fair and equitable, the judge cannot accept trustee's word that the settlement is reasonable, nor may the judge merely rubberstamp a trustee's proposal. (Doc 285 at 12.) (citing, *In re Greenberg*, 2005 WL 6746610, at 3 (Bankr. S.D.Ga. Apr. 5, 2005)).

The Trustee, as the proponent of the Amended Compromise Motion bears the burden of demonstrating the proposed settlement is both reasonable and in the best interest of the bankruptcy estate. *In re Vazquez*, 325 B.R. 30 (Bankr.S.D. Fla. 2005). A trustee proposing a settlement that includes the sale of assets must demonstrate an articulated business justification

---

[11] Rule 9019 of the Federal Rules of Bankruptcy Procedure states in pertinent part, "[o]n motion by the trustee and after a notice and hearing, the court may approve a compromise or settlement".

Case 16-02270   Doc 418   Filed 04/03/20   Entered 04/03/20 13:51:57   Desc Main
Document      Page 9 of 21

or sound business reasons for the proposed sale.  (Doc.285 at13)(citing,  *In re Able Body Temp. Servs., Inc.*, 2015 WL 791281, at 5 (M.D. Fla. Feb. 25, 2015), *aff'd,* 632 F. App'x 602 (11th Cir. 2016); *In re Moore,* 608 F.3d 253, 262 (5th Cir. 2010); *In re Schipper,* 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986)).

<u>Prior Denial Order</u>

The Court is charged with evaluating Motions to Compromise to ensure receipt of reasonably equivalent value for the claims surrendered.  (Denial Order, Doc 285 at 19 ) (citing *In re Oakfabco, Inc.,* 571 B.R. 771, 775 (N.D. Ill. Aug. 4, 2017); *In re Energy Co-op. Inc.,* 886 F.2d 921, 927-29 (7th Cir. 1989)).  Upon trial of the Prior Motion and consideration of the *Justice Oaks* factors[12] as well as other relevant considerations as set out in the Denial Order, this Court concluded that the Trustee failed to meet his burden of establishing that the terms of the Prior Motion did not fall below the lowest standard of reasonableness. *Id*. The Denial Order articulated shortcomings in the Trustee's evidence including: lack of an independent, unbiased appraisal of the Property, failure to market the Property, failure to quantify benefits to be received by Levada for the significant transfer of rights and termination of its obligations under the ARA and the broad, sweeping releases.  In the interest of efficiency and judicial economy this Court re-affirms its prior findings, rationale and conclusions of law as  delineated in its Denial Order (Doc. 285) and limits

---

[12] (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. See, *In re Chira,* 567 F. 3d 1307, 1312–13 (11th Cir. 2009) (citing *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir. 1990).

its analysis herein to the reasons the Amended Compromise Motion and additional evidence presented fails to meet the minimum standard of reasonableness required for approval.

*Lack of Independent, Unbiased Appraisal*

The Trustee's testimony evidenced that he reviewed the Denial Order and understood consideration of a subsequent motion to compromise would require an independent, unbiased appraisal of the Property to be conveyed; however, the Court is not satisfied that Hansen's appraisal is independent, unbiased or reliable. The undisputed testimony was that the Trustee requested appraiser recommendations from Adrian Zajac ("Zajac"), a principal of Levada, the proposed purchaser. Not only did the Trustee seek recommendations from Zajac but he also selected his first recommendation. (Ex. 139). Further, Zajac was involved in the process and communication with the appraiser to the point where Hansen indicated in an e-mail communication that he was appraising the Property for Zajac. (Ex. 140).

In this case of dueling appraisals, differing by millions of dollars, involving subjective discount factors, impartiality of the Trustee's appraiser is of the utmost importance. The Denial Order clearly delineated the need for an independent, unbiased appraisal. This Court would be remiss to overlook the Trustee's failure to insure the absence of potential influence from the proposed purchaser. Not only did the Trustee fail to curtail potential influence of the appraiser by the proposed purchaser, he also actively engaged the representative of the proposed purchaser in the process and condoned his involvement. The interests of the Trustee and the proposed purchaser are not aligned with regard to valuation of estate property sought to be conveyed. The Trustee has a duty to obtain reasonable value for the Estate while Levada and Zajac indubitably benefit from a lower valuation. This dichotomy gives rise to an inherent conflict which this Court must take into account in its consideration of the weight to be afforded to the Trustee's appraisal. The Court

11

finds that the nature and extent of involvement of a principal of the proposed purchaser in the appraisal process at a minimum creates the appearance of impropriety, and raises a specter of doubt as to improper influence and potential bias.

*Dubious Appraisal Methodology*

The methodology reflected in Hansen's Appraisal Report is not appropriate considering the particular facts of this case. Even if the Court disregards the potential bias created by the involvement of Zajac, as well as various errors throughout the Hansen Appraisal Report, the fact that Hansen's Appraisal did not even mention at least thirteen recent comparable sales casts a shadow on its reliability. (Debtor's Ex.3A). Further, Hansen's use of a partial interest discount factor to calculate the valuation of Osprey's interest was not warranted. In particular, Hansen's Appraisal Report reflects a twenty-five percent discount to Osprey's mineral and future sale interests. Ostensibly, the rationale for the substantial devaluation of Osprey's interest is the fact that Osprey holds a partial interest in the Property. In a situation, unlike the one here, where the purchaser will only have a partial interest, it is plausible that a discount factor may be appropriate due to the restraints and limitations imposed by partial ownership. However, such analysis is problematic and illogical in this instance because the proposed sale will result in acquisition of the full fee interest by Levada as the co-owner. Hence, discounting Osprey's interests in conjunction with the Amended Compromise Motion serves only to unfairly benefit Levada to the detriment of the Estate. The Trustee's testimony even acknowledged that an argument can be made that "it does not make sense" to apply a discount factor in the context of this Compromise. Accordingly, this Court finds that the methodology employed by Hansen is not equitable and the Trustee's reliance thereon in furtherance of the Amended Compromise Motion is not reasonable.

The Amended Compromise Motion, like its predecessor, seeks to convey all of Osprey's interests in the Property located in Carbon and Emery Counties, Utah including mineral interest in 17,027 acres, surface revenue interest in 13,636 acres and future net sale proceeds interest in 13,636 acres. Hansen's testimony and appraisal report opined that Osprey holds 33% of the mineral interests, 50% interest in the surface revenue and 33% interest in the future net sale proceeds. While the Debtor asserted its interests in the Property are greater than indicated in Hansen's appraisal, the Court need not decide that dispute at this juncture.

This Court previously indicated in its Denial Order (Doc. 285 at 17) that it took issue with the fact that the Trustee never marketed the Property; likewise, the testimony on the Amended Compromise Motion failed to satisfy the Court that a reasonable degree of due diligence was exercised in regard to marketing the Property. Although the Trustee may have had cursory discussions regarding potentially listing or selling Osprey's partial interests, the Trustee failed to present sufficient evidence of diligent efforts to actively market the Property. The Trustee's testimony established he had communications with moneyed third parties, which expressed interest in acquiring the entirety of the Property; however, he did not entertain discussions regarding a potential §363 sale. The Trustee admitted the requirements for a §363 sale existed; excepting his position as to the lack of a tenancy in common. However, the evidence established that Trustee relied solely upon his own interpretation which is hotly contested. The Trustee did not establish his qualification to give a legal opinion on matters of Utah property law, offer any expert testimony on that point or seek adjudication in that regard. Instead the Trustee simply indicated he did not believe it would be worthwhile to pursue a §363 sale and expressed his desire to avoid the anticipated expenses and auction fee by pursuing the Amended Compromise Motion. In this

13

likely surplus case with over $5,500,000.00 in the estate account, and a strenuous objection by Breland as the sole owner of Osprey, this Court finds the Trustee's disregard for this Court's Denial Order by failing to diligently market the property and giving "short shrift" to the potential of a §363 sale is not reasonable.

### Lack of Evidence of Value In Terminating the ARA

Considering the absence of evidence offered on the Amended Compromise Motion as to the value of terminating the ARA, the Court harkens back to the language from its prior Denial Order, wherein it clearly and succinctly stated in pertinent part, "there is significant value in terminating the ARA; however, insufficient evidence was presented as to the value assigned to this significant transfer of rights." (Doc. 285 at 7). Hansen's Report failed to reflect analysis or discrete valuations with regard to various components of the Amended Compromise Motion including: the proposed transfer of rights under the ARA; the benefit to Levada of termination of its obligations under the ARA; or the value of the potential contingency interest held by Osprey upon a default by Levada (collectively the "Additional Interests"). Hansen's conflicting testimony that he assessed the Additional Interests in his valuation, contradicted his report, his prior deposition testimony and his prior in Court testimony. This Court previously deemed such Additional Interests significant and therefore, the failure of the Trustee to clearly set out and substantiate findings as to any purported valuation thereof leaves this Court once again with insufficient information to assess the reasonableness of the settlement.

### Inequitable Releases

The Court's Denial Order further explained that insufficient evidence was presented regarding the necessity and value of the proposed releases (Doc. 285 at 19) and the evidence

14

presented at the hearing on the Amended Compromise Motion was no more compelling. Although the Court understands that releases are common in the context of settlements, the releases proposed in this instance are not equitable. In particular, the proposed comprehensive releases are one-sided only benefitting Levada, Zajac and Argos together with their principals, owners, members, attorneys, employees, affiliates and affiliated and related persons and entities while excluding Breland and Osprey from the long list of parties to be released. The evidence presented failed to provide a justifiable basis for the inclusion of comprehensive releases benefitting a myriad of persons and entities associated with Levada to the exclusion of Breland and Osprey. The Court cannot conceive of a rational explanation for the failure of the Trustee to seek mutual releases in the context of a settlement involving the transfer of substantial property interests, significant contract rights and a history of contentious litigation between the parties. Such oversight was essentially admitted by the Trustee when he was questioned by Breland's counsel and indicated that he "may need to re-visit that". The Trustee's nonchalance in failing to negotiate mutual releases in conjunction with the proposed compromise is, in the opinion of this Court, unreasonable.

<u>Additional Factors Evidencing Unreasonableness</u>

Notwithstanding the above-described failures of the Trustee to satisfactorily address deficiencies clearly espoused in the prior Denial Order, additional considerations cause the Court further consternation as to the propriety of the Amended Compromise Motion. Specifically, the nuances of the purported claim reduction, lack of information available to the Trustee in negotiating the terms of settlement, inadequate consideration and the likelihood of a surplus administration weigh in favor of Breland's Objection to the Amended Compromise Motion.

Case 16-02270    Doc 418    Filed 04/03/20    Entered 04/03/20 13:51:57    Desc Main
Document    Page 15 of 21

*Illusory Net Claim Reduction*

The Amended Compromise Motion contends that the claim of Levada will be reduced by $2,300,000.00 as opposed to a previously proposed reduction of $1,400,000.00. Such reduction is seemingly a farce. A close analysis of the facts reveals that although the Prior Motion would have resulted in an allowed unsecured claim to Levada of approximately $1,847,695.94 and the Amended Compromise Motion purports to reduce Levada's claim to $1,700,000.00, the terms of the Amended Compromise Motion also relieve Levada of its obligation to pay up to $250,000.00 on the Donados' claim. (Doc. 285 at 3). The Trustee's settlement of the Donado claim from estate funds, obviated payment obligations of Levada under the Prior Motion. Hence, pursuant to the Amended Compromise Motion, Levada will have a $1,700,000.00 claim *plus* the benefit of the $200,000.00 payment by the Trustee to the Donados, which exceeds the amount Levada would have received under the Prior Motion. Further, the Prior Motion allowed Levada's claim as unsecured while the Amended Compromise Motion provides $850,000.00 of Levada's claim shall be treated as secured.

*Insufficient Information to Substantiate Adequacy of Consideration*

The Trustee failed to establish that he garnered or evaluated sufficient information to make a fully informed judgment concerning the reasonableness of the consideration to be received by the Estate pursuant to the terms of the proposed settlement. In particular, the Trustee did not evaluate the legitimacy of substantial post-petition attorney's fees included in Levada's Amended Claim. Although Levada contends it is entitled to an increased claim based upon additional attorney's fees incurred after the filing of the instant bankruptcy, the propriety of post-

petition attorney's fees has not been adjudicated.  Breland maintains that the additional attorney's fees claimed are not appropriate due to contractual breach of Levada's obligations under the ARA to pay taxes on the Property.  The evidence, including the testimony of the Trustee, established that Levada indeed breached its obligation to pay taxes  necessitating the filing of an emergency motion by the Trustee to seek payments thereof which was subsequently granted. (Debtor's Ex.133-134).   Yet the Trustee's testimony indicated that he did not consider Levada's breach while  negotiating the settlement, nor did he seek to set off the Estate's fees incurred related to the emergency motion occasioned thereby.

Further, the Trustee testified that he was uncertain if the post-petition fees sought in Levada's amended claim included fees related to defense of the emergency motion.  Although, the Trustee indicated that he requested substantiation of attorney's fees from Levada and such documentation was not provided to him, he nonetheless proceeded with the Amended Compromise Motion without such information.  The shear amount of the post-petition attorney's fees claimed by Levada of $1,268,549.40 (ECF Claim 15-2) warrants review by the Trustee prior to accepting reduction of  Levada's amended claim as adequate consideration. The Trustee's bare reliance on the assertions of a Creditor that its attorney's fees are appropriate does not evidence the level of prudence expected from a Trustee appointed to administer an estate of this magnitude. Absent confirmation of the appropriateness of attorneys' fees claimed, the Trustee could not fully assess the actual value to be received by the Estate and the lack of full evaluation of such consideration is inherently unreasonable.

The terms of the Amended Compromise Motion include the Trustee's relinquishment of an additional cause of action. Subsequent to the Denial Order, the Estate commenced an adversary proceeding[13] against Levada seeking avoidance of transfers pursuant to 11 U.S.C. §547. The Trustee's testimony unambiguously maintained that he had the "high side" regarding the potential outcome of such matter. Given the Trustee's institution of the Preference Adversary and espoused confidence in the strength of his position, the abandonment of such action benefits Levada and therefore warrants a concomitant benefit of the bargain to the Estate. Compared to the terms of the Prior Motion, the Court does not discern the Amended Compromise Motion to yield any genuine additional benefit to the Estate. In fact, it seems the net effect of the Amended Compromise Motion is that the Estate is giving up more and receiving less than previously proposed.

*Surplus Case*

In deciding whether to approve a compromise in a solvent estate, the Court must consider the individual Debtor's residual rights. *In re: Spielfogel,* 211 B.R. 133 (Bankr. E.D. N.Y. 1997); *In re Kazis*, 257 B.R. 112 (Bankr. D. Mass. 2001) (Trustee shall take into account the Debtor's equity with regard to how inventory should best be sold to satisfy claims of Creditors). A Chapter 11 trustee who manages affairs of debtor is bound by the duty of loyalty, which requires the trustee refrain from self-dealing, prevent conflicts of interest, avoid the appearance of impropriety and maximize value of the estate. *Spielfogel* at 144 (citing, 7 *Collier on Bankruptcy,* Sec. 1108.09 (15th ed. rev.1997), citing, inter alia *Commodity Futures Trading Comm'n v.*

---

[13] Such action has been previously referred to herein as the Preference Adversary.

*Weintraub,* 471 U.S. 343, 352, 105 S.Ct. 1986, 1992–93, 85 L.Ed.2d 372 (1985); *In re Central Ice Cream Co.,* 836 F.2d 1068 (7th Cir.1987)).   In a surplus case, a Chapter 11 Trustee seeking approval of a settlement owes a fiduciary duty to the Debtor as a residual claimant.  The Trustee's testimony established that there is over $5,500,000.00 in the estate account, he expects the administration of the case to result in a surplus and he did not take Breland's position into account in deciding which properties to liquidate.  Breland is a real estate developer and his future livelihood will be affected by which properties he may or may not be left with upon conclusion of this case. Hence, it is inequitable for a Trustee, bound with a fiduciary duty to maximize value of the estate, to disregard the input of the Debtor or enter into a transfer of substantial estate property and contractual interests without a justifiable, well-reasoned and fully articulated basis therefore.  In this case, there is no dispute that the best use of the Property is a hold and there is no urgent need or benefit to an immediate sale.

The Court did not find the Trustee's cursory testimony, that he sought to enter into the settlement to get rid of entanglement with Levada and avoid the need to expend legal fees, compelling. Taking the path of least resistance is not the standard under *Oaks*. See, *In re Justice Oaks II, Ltd.,* 898 F.2d 1544 (11th Cir. 1990).   Although a Trustee should weigh legal expenses in the analysis, there is over $5,500,000.00  in the Estate account and no compelling reason to rush to judgment or pursue a half-baked settlement proposal.   Despite the Trustee's apparent desire "to get rid of" matters he would rather not deal with, he cannot cast away Debtor's interests without justification and adequate consideration. The Trustee has other available means to resolve outstanding issues with Levada, including but not limited to objections to claim and formulation of a disclosure statement and plan.  Considering the substantial funds on hand, the Trustee has adequate resources to investigate the deficiencies noted herein and evaluate various

19

means of resolution to ensure that any proposed settlement is in the best interest of the Estate. The Trustee's pursuit of the Amended Compromise Motion which by the Trustee's own admission is worse than the Prior Motion in the opinion of this Court, falls below the lowest standard of reasonableness.

## CONCLUSION

Based on the forgoing, this Court concludes that the Trustee has failed to meet his burden to establish that the terms of the Amended Compromise Motion are fair, equitable and in the best interests of the Estate. The evidence presented on the Amended Compromise Motion did not satisfactorily address this Court's concerns previously articulated in the Denial Order, including: lack of an unbiased appraisal; flaws with the Trustee's Appraiser's methodology; failure to value the significant transfer of rights under the ARA; inequitable proposed releases and the absence of genuine effort by the Trustee to fully evaluate the potential for a §363 sale. Further, the hearing on the Amended Compromise Motion brought to light additional matters weighing against approval of the settlement. It is apparent to the Court that the Trustee neglected to garner sufficient information to make a well-informed analysis and effectively negotiate tenable settlement terms to ensure fair value to the Estate. Further, the Trustee's apparent lack of concern for Breland's interest, despite the likely surplus nature of the case, is extremely disconcerting to the Court. Each of the above listed findings on its own, in the view of this Court, constitute sufficient basis for denial of the Amended Compromise Motion. Collectively such deficiencies clearly evidence that the Trustee has not met his burden to establish that the settlement did not fall below the lowest standard of reasonableness. In sum, the Court agrees with the Trustee that the terms of this settlement are indeed worse than those of the Prior Motion which was denied by this Court over a year ago.

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED that the Joint Amended Motion of A. Richard Maples as Trustee, Osprey Utah, LLC and Levada EF Five, LLC to Approve Compromise is hereby DENIED without prejudice.

Dated: April 3, 2020

_____
JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE